## Case No. 14,214.

### Ex parte TUCKER.

[1 Cranch, C. C. 89.] [1]

Circuit Court, District of Columbia. April Term, 1802.

#### NATURALIZATION—RESIDENCE—DEPOSITION.

Upon application for naturalization a deposition in 1802, that the deponents have known the applicant "since the year 1793, in New York," is not evidence that he was residing in the United States before the 29th of January, 1795.

---

## Case No. 14,215.

### In re TUCKER.

[2 Tex. Law J. 171.]

District Court, W. D. Texas. July 12, 1878.

#### BANKRUPTCY — DISCRETIONARY POWERS OF ASSIGNEE—EXEMPTIONS.

An assignee in bankruptcy, under the discretionary powers vested in him by the provisions of section 5045, Rev. St., cannot set apart money, unless such money is the proceeds of the sale of specific property embraced within the exemptions, which should and ought to be set apart to the bankrupt, or for temporary support, where the family is entirely destitute.

In pursuance to an order of the honorable court made in the chambers at Austin, on the 22d day of June, 1878, referring to me, one of the registers of said district, the petition of F. N. Tucker, bankrupt, aforesaid, praying that an allowance of five hundred dollars in money be paid to him out of the funds belonging to said bankrupt estate in the hand of F. B. Bryan, assignee, which he claims as an exemption, under the provisions of section 5045, Rev. St. U. S., I ordered a hearing of said matter at Dallas, in said district, on the 12th day of July, 1878, and also ordered, at the same time and place, the examination of the bankrupt. The petition of said bankrupt, asking such allowance, having been indorsed and recommended by said assignee at the hearing thereof, I appointed Messrs. Brookhout & Simpson, attorneys, to represent the

[1] [Reported by Hon. William Cranch, Chief Judge.]

interests of the general creditors, and Gen. W. L. Caball & Harris appeared as attorneys for said bankrupt. At the hearing said bankrupt and other witnesses were examined touching his business and dealings prior to the commencement of proceedings in bankruptcy, his means of support and present status, and condition of those connected with him, from which, and from an examination of the schedules of said bankrupt, on file, the following facts are made to appear: (1) That said bankrupt is a single man, has never been married, and has no family of his own; that his liabilities, as shown by his schedules on file, amount to near $6,000, and assets, consisting of a stock of groceries, merchandise, etc., was invoiced by the assignee at $2,643.-03, with some notes and accounts of no fixed or determinate value. (2) That the family consists of said bankrupt, his mother and two brothers, who live together on the homestead of his mother in the city of Dallas; that his mother is an invalid, and that his younger brother, who is about 19 years of age, has nearly lost his eyesight; that said bankrupt filed his petition in voluntary bankruptcy on the 22d day of January, 1878, in said court; that prior thereto he was possessed of certain real estate, to-wit, a house and lot in the city of Dallas, which he claimed as a homestead, and that between the 1st and 10th of January, only a few days before he filed his petition in bankruptcy, he sold said property to Messrs. Snieder & Davis, merchants in the city of Dallas, and agents for Zeeblow & Beacham, for the sum of $1,400, $1,100 of which he paid to said parties, and the balance, $300, he paid to another house in the city of St. Louis. It further appears that the furniture for his mother's house was furnished by said bankrupt, which he states still belongs to him, though not rendered in his schedules of assets, and value not given.

By S. T. NEWTON, Register:

The assignee having indorsed and recommended the allowance claimed by the bankrupt in his petition, it may be viewed, so far as his act is concerned, in the light of the certificate of exemptions which the law requires him to make to each bankrupt, under section 5045, Rev. St., and by which act he is invested with discretionary powers.

The question then presented upon the facts as above reported is, was the assignee correct, in the exercise of the sound discretion with which the law invests him, in recommending the allowance, and do the facts bring the case within the purview of any reported adjudications upon the subject where money out of the assets of the estate has been allowed? I have been referred, by counsel for the bankrupt, to the following adjudications as authorities sustaining their position: In re Ruth [Case No. 12,172]; In re Cobb [Id. 2,920]; In re Thornton [Id. 13,994]; In re Hay [Id. 6,253]; In re Thompson [Id. 13,938]. From a careful examination of these authorities, I am unable to see their applica-

tion. In the case In re Thornton [supra] the court decides: "That money may be set apart when the family is entirely destitute, without house, bedding, furniture, provisions, and means for temporary subsistence or support." The other two cases above cited are to the same effect. In the case In re Welch [Case No. 17,366], where an application by the bankrupt, who was of the age of seventy years, and wife sixty-eight, with one grandchild aged seven years, to an assignee for allowance in money, Judge Blatchford held that, under the word "article" or word "necessaries," money could not be set apart, unless such money is the proceeds of specific things which could and ought to be set apart under the head of "other articles and necessaries" of the bankrupt. In applying the facts and circumstances of this case to the law, I do not think the allowance can or ought to be made.

The evidence shows that the bankrupt is a single man, has never been married, nor had any family of his own. Our state statute (article 6834, 2 Pasch. Dig. p. 1401), after enumerating the articles exempted and set apart to heads of families, says: "And to every citizen, not the head of a family, one horse, bridle and saddle, all wearing apparel, all tools, apparatus and books belonging to his private library." Under this head I think no claim can be set up to an allowance in money. Is he then entitled to it under the act of congress? The bankrupt, in his examination, states that he resides with his mother on her homestead in the city of Dallas; that he furnished the house with his own furniture, which he still owns, but was not rendered in his schedules, and no fixed value placed upon it; that he is a merchant by profession, and has a brother 21 years of age to assist him in the support and maintenance of his mother, who is shown to be an invalid, and a younger brother 19 years of age, who is partially blind. The evidence further shows that the bankrupt filed his petition in voluntary bankruptcy in the district court of said district on the 22d day of January, 1878, and he states that between the 1st and the 10th of that month he sold the house and lot which he owned in the city of Dallas for the sum of $1,400 in cash, and that he paid the entire amount of the proceeds of that sale to two creditors residing in the city of St. Louis, thus applying more than one-half of the entire value of his estate to two of his creditors. Whether this sale was made in violation of section 5128, Rev. St., is not necessary for me, for the purpose of determining the merits of the claim before me, to inquire. This section declares: "If any person, being insolvent, or in contemplation of insolvency, within four months before the filing of the petition by or against him, with a view to give a preference to any person having a claim against him, or who is under any liability for him, procures or suffers any part of his property to be attached, sequestered, or seized on execution, or makes any pledge, assignment, transfer, or conveyance of any part of his property, either directly or indirectly, absolutely or conditionally, the person receiving such preferment, pledge, assignment, transfer or conveyance, or to be benefited thereby, or by such attachment, having reasonable cause to believe such person is insolvent, and knowing that such attachment, seizure, sequestration, preferment, pledge, assignment, or conveyance, is made in fraud of the provisions of this title, the same should be void, and the assignee may recover the property, or the value thereof, from the person so receiving it or to be benefited."

Whether the sale of this property, by said bankrupt, was intended to give a preference to the two creditors receiving the proceeds thereof or not, the presumption is irresistible that he knew his financial condition and inability to pay all his creditors in full, and that he was depriving his other creditors of an equal participation in his property, and a just and equitable distribution thereof among them. If the condition of the family is such now as to make necessary for an allowance in money to be made for their support, it is but fair to presume that the same necessity existed at the time he disposed of his property in Dallas, and had the proceeds under his control, which he could have reserved. I think it would be unjust to the creditors, who have not been benefited or received any portion of the proceeds of said property, to contribute one-fourth, at least, of the funds in the hands of the assignee for the support of the family, when it is not contended or shown that the money in the hands of the said assignee is the proceeds of the sale of any portion of the bankrupt's property which should have been set apart to him; when it is evident, too, that the creditors have not been paid for the goods from the sale of which this money was derived. The application, I think, should be refused and disallowed, which is respectfully submitted.

The attorneys for the bankrupt request that my ruling be certified to the honorable court for revision.

DUVAL, District Judge. In connection with the petition of the bankrupt, F. N. Tucker, to be allowed five hundred dollars out of funds in the hands of his assignee, I have duly considered the facts as presented in the depositions accompanying said petition, and am of the opinion that the allowance prayed for would not be authorized by the law. The foregoing opinion of the register is, therefore, in all things approved and confirmed, and said allowance refused.